UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PROVIDENCE AIOSSA,

                                    Plaintiff,          MEMORANDUM
                                                       OPINION AND ORDER
                  -against-
                                                       CV 10-01275 (JS) (ETB)
BANK OF AMERICA, N.A., et al.,

                                    Defendants.
----------------------------------------------------------------X


        Plaintiff Providence Aiossa filed a Motion to Compel ("Motion") on July 8, 2011, seeking

to compel defendants Bank of America, John Frazza, and Susan Cole to produce documents that

defendants have withheld pursuant to attorney-client privilege and/or the work product doctrine.  In

the alternative, she requests that the Court review the challenged documents in camera.  Defendants

filed an Opposition to the Motion ("Opposition" or "Opp.") on July 8, 2011, countering plaintiff's

arguments and offering further information about withheld documents.  Plaintiff filed her Reply on

the same day.  On August 25, 2011, plaintiff filed a Declaration of Tracey L. Brown ("Brown

Decl."), arguing that, based on recent deposition testimony, more documents withheld as privileged

should be produced.  Defendants filed an Opposition to the Brown Declaration ("Opp. to Brown

Decl.") on August 3, 2011.

        On August 8, 2011, the Court directed defendants to produce certain challenged documents

for in camera review.  The Court has reviewed the documents, and the matter is now ready for

decision.  For the reasons below, plaintiff's Motion to Compel is DENIED.


                                    -1-

<u>B</u><small>ACKGROUND</small>

In this diversity action, plaintiff claims defendants unlawfully discriminated against her on the basis of age and retaliated against her for opposing discriminatory practices in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 <u>et seq.</u>, and the New York City Human Rights Law, Admin. Code of the City of New York §§ 8-101 <u>et seq.</u>  She also asserts a claim for breach of contract.

The following allegations are relevant here.  Plaintiff had been a Mortgage Loan Officer in Bank of America's Commercial Real Estate department beginning since 1992.  (Motion at 2).  Her direct manager since 2005 was an African-American man named Keith Cook, whose territory comprised New York City and Long Island.  (<u>Id.</u>).  In July 2006, defendant Susan Cole was hired as Cook's manager.  Plaintiff alleges that Cole and her boss, defendant John Frazza, implemented a plan to break up Cook's territory because of racial animus.  (<u>Id.</u>).  Thereafter, plaintiff allegedly complained about the discrimination and was retaliated against because of her complaints.  (<u>Id.</u> at 6).  Specifically, she was subjected to six separate investigations between July 2007 and her termination in August 2008.  (<u>Id.</u>).  Three of the investigations were undertaken by Corporate Security and three by Advice and Counsel, a department within Human Resources.  (<u>Id.</u> at 3-5).  Plaintiff asserts that none of the investigations found that she had engaged in any wrongdoing or violated any bank policy.  (<u>Id.</u> at 5).  However, she was terminated in August 2008 on the basis of "loss of trust and confidence."  (<u>Id.</u>).

Plaintiff alleges certain irregularities relating to these investigations.  First, she asserts that in a case filed by Cook in the Southern District of New York, Missy George of Advice and Counsel filed a false affidavit asserting that she had never received a complaint regarding Cole's use of a

racial epithet against Cook.  (See id.; see also id., exh. 7 (George Affidavit); exh. 2 (Denise Lott Deposition Transcript)).  Plaintiff further asserts that when she initiated an investigation to look into her claims of age discrimination and retaliation, Lisa White of Advice and Counsel improperly wrote up the complaint, leaving out any reference to the discrimination and retaliation charges.  (See id. at 4; see also id., exh. 11 (complaint write-up)).  Finally, plaintiff complains that she was fired in violation of the bank's progressive discipline policy.  (Id. at 5-6).  According to plaintiff, all of this indicates collusion and a conspiracy to terminate her employment.  (Id. at 6).

### PLAINTIFF'S ARGUMENTS

Plaintiff argues that two overarching concerns counsel in favor of requiring defendants to disclose the withheld material.  First, the irregularities in the investigation, including the allegedly false affidavit submitted in the Cook case, "mean[] that all of the decisions relating to Ms. Aiossa's termination should be disclosed."  (Id. at 6).  Second, the fact that the attorneys upon whom the assertion of privilege is founded are in-house counsel "mandates that a stricter standard be imposed when evaluating the attorney-client privilege."  (Id. at 6-7).

More specifically, plaintiff challenges defendants' withholding of the following documents, which are here segregated into groups based on the reasons plaintiff gives for their production:

Group 1:  These are documents that relate to the sixth and final investigation of plaintiff.  Plaintiff argues that these documents were all created after plaintiff had complained to Advice and Counsel regarding discrimination and retaliation, which occurred one month before the legal department was brought into the investigation.

She argues that defendants are using the attorney-client privilege to shield documents that "go to the heart" of the matter. (Motion at 7-9). She further argues that these documents should be produced pursuant to the crime-fraud exception to attorney-client privilege. (Motion at 9). She asserts that (1) the legal department was consulted only after plaintiff complained to Advice and Counsel, (2) investigators found no wrongdoing, (3) plaintiff was terminated in violation of the progressive discipline policy, (4) a false affidavit was filed in the Cook case, and (5) Advice and Counsel did not record plaintiff's discrimination and retaliation claims. These five facts, plaintiff argues, implicate the crime-fraud exception. (Id. at 9-10).

The specific documents at issue in this group are (1) BANK 00952, 0961-66, 0975, and 0979–redacted or withheld pages from a report by Wendell Fox of Corporate Security regarding the sixth and final investigation into plaintiff, including emails between employees and in-house counsel (Motion at 7; id., Exh. 1, at 2); (2) BANK 0101–note between Advice and Counsel's Diana Rhine and in-house counsel Chad Butler (Id. at 8); and (3) BANK 2690-2903–emails (with attached reports and handwritten notes regarding the Aiossa investigation) among Fraud Operations, Corporate Security, Consumer Real Estate, Advice and Counsel, and legal. (Id.). This group includes BANK 2801-03, which is an email written two days before plaintiff's termination.[1]  (Id.).

Group 2: These are documents that plaintiff asserts are insufficiently

---

[1]Defendants assert that BANK 2802-03 are not privileged and have already been produced. (Opp. at 2, 12).

described in defendants' privilege log.  The specific documents at issue are (1) BANK 1110-11–documents withheld as non-responsive because they relate to a different investigation (Motion at 10); (2) BANK 2687-89–documents including an email thread with the subject line "investigation."  (Id.).  Two pages of the thread do not include any lawyers as recipients; two pages list in-house counsel Butler as a recipient (id. at 10-11); (3) BANK 2804-13–documents identified as "misrepresentation letters" with no indication that attorney advice was sought or given[2] (Id. at 11); and (4) BANK 2837-3218–documents listed as in-house counsel Butler's file on the Aiossa investigation.

Group 3: In a submission filed on July 25, 2011, plaintiff seeks to supplement the Motion with another exhibit to challenge defendants' withholding of more documents.  (See Brown Decl. at 2; id., Exh. 3).  Plaintiff asserts that, subsequent to filing the instant Motion, witness Wendy Leahy, a fraud investigator at Bank of America, testified in a deposition that she did not request legal advice from in-house counsel, but did communicate with the legal department when in-house counsel Butler contacted her about the Aiossa investigation.  (Id. at 2; see also id., Exh. 3 at 2-3 (Leahy Depo. at 27)).  Plaintiff therefore argues that the following documents, which were assertedly withheld on the basis that they involved Leahy seeking legal advice from Butler, should be produced: BANK 0963-64; 0965-67; 1886-87; 2690;

---

[2]Plaintiff asserts that BANK 2814 is also identified as a "misrepresentation letter," however, BANK 2814-20 appear to be documents related to Cole's severance package.  (See Motion at 11; Opp. at 15).  In any case, Defendants have agreed to produce BANK 2814-20. (Opp. at 15 n.3).

2695; 2697-99; 2700; 2703-07; 2709-12; 2715-21; 2728; 2743-47; 2783-94; 2796-97; 2801; 2821-36; 3491-92; 3493-97; 3500-29.[3]  (Id. at 2).


DISCUSSION

I.    Governing Law

In diversity actions, attorney-client privilege is governed by state law, whereas federal law governs issues of attorney work-product privilege.  See Newmarket Partners, LLC v. Sal Oppenheim Jr. & Cie. S.C.A., 258 F.R.D. 95, 99 n.2 (S.D.N.Y. 2009) (citing Application of American Tobacco Co., 880 F.2d 1520, 1527 (2d Cir. 1989) and Bowne of New York City v. AmBase Corp, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).   New York law on attorney-client privilege is "generally similar to accepted federal doctrine."  Bowne, 150 F.R.D. at 470.

The party invoking attorney-client privilege "must demonstrate that the information at issue was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services to the client."  Bowne, 150 F.R.D. at 470-71 (citing People v. Mitchell, 58 N.Y.2d 368, 373 (1983)).  Although "the need to apply the privilege cautiously and narrowly is heightened in the case of corporate staff counsel," it is clear that the privilege attaches to communications between a company's employees acting on behalf of the company and in-house counsel, as long as the predominant purpose of the communication is to procure or provide legal, rather than business,

---

[3]Plaintiff also points out that Leahy testified that, until the Aiossa investigation, "misrepresentation letters" were routinely sent out without approval from the legal department. Therefore, the misrepresentation letters in Group 2, at BANK 2804-13, which were assertedly withheld because Butler was performing a legal review of them, should be produced.  (Id. at 2-3; see also id., Exh. 3 at 5).  This argument will be discussed in the analysis of Group 2.

advice.  See Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 592-93, 594 (1989);

see also Roswell Park Cancer Inst. v. Sodexo America, LLC, 891 N.Y.S.2d 827, 829 (App. Div.

2009).

"The attorney work product doctrine provides qualified protection for materials prepared by

or at the behest of counsel in anticipation of litigation or for trial."  In re Grand Jury Subpoena Dated

July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).  Two kinds of work product may be entitled to the

privilege:

> [F]act work product may encompass factual material, including the
> result of a factual investigation.  In contrast, opinion work product
> reveals the mental impressions, conclusions, opinions, or legal
> theories of an attorney or other representative, and is entitled to
> greater protection than fact work product.  To be entitled for opinion
> work product protection, the party asserting the privilege must show
> a real, rather than speculative, concern that the work product will
> reveal counsel's thought processes in relation to pending or
> anticipated litigation.

Id. at 183-84 (internal quotation marks and citations omitted).  Establishing the applicability of the

work product privilege is a "heavy burden."  Id. at 183.

II.     The Group 1 Documents Are Privileged

A.     Defendants Have Not Waived Privilege for These Documents

Plaintiff argues that these documents should be produced because they "go to the heart" of

Aiossa's termination.  (Motion at 8, 9; see also Reply at 4 ("Since the basis of this lawsuit is a

dispute regarding the reasons for the discriminatory treatment and retaliatory termination of Plaintiff,

any documents relating to those facts is discoverable.").  Plaintiff further argues that the fact that defendants did not involve in-house counsel in any investigations of Aiossa until the final one shows that defendants are using the attorney-client privilege "to shield the documents associated with the final investigation from discovery."  (Id. at 8-9).  Defendants counter that, to the extent that plaintiff is arguing that they have waived attorney-client privilege, plaintiff must show that defendants "have selectively disclosed information helpful to [them] but withheld unfavorable related portions to [their] advantage."  (Opp. at 10 (citing Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 365 (E.D.N.Y. 2009)).  Defendants assert that plaintiffs have failed to meet this burden.  (Opp. at 11).  Defendants further argue that they have not waived the privilege by producing selectively-redacted copies of documents.  (Id.).  Plaintiff's arguments are unavailing.

First, plaintiff's argument that the Group 1 documents should be produced because they "go to the heart" of the matter is legally unsupported and, ultimately, unsuccessful.  The fact that an attorney-client communication is relevant to a material issue in a case does not overcome the attorney-client privilege.  If it did, the privilege would be eviscerated.[4]  See In re County of Erie, 546 F.2d 222, 229 (2d Cir. 2008) ("[P]rivileged information may be in some sense relevant in any lawsuit.  A mere indication of a claim or defense certainly is insufficient to place legal advice at issue."); Deutsche Bank Trust Co. of the Americas v. Tri-Links Inv. Trust, 837 N.Y.S.2d 15, 23 (App. Div. 2007) (same).

_____

[4]To the extent that plaintiff is arguing that this material should be disclosed because she has demonstrated a substantial need for the information, the argument fails.  Under New York law, "[t]he only category of potential[ly] [privileged] materials that is subject to disclosure based on substantial need is trial preparation materials."  Am. Re-Insurance Co. v. U.S. Fid. & Guar. Co., 837 N.Y.S.2d 616, 620-21 (App. Div. 2007).  Thus, attorney-client communications are not subject to a "substantial need" test.

Plaintiff may, however, be arguing that defendants have waived the privilege because they have put privileged material at issue by selectively disclosing favorable material and withholding unfavorable material.  (See Motion at 8 (citing ABB Kent-Taylor v. Stallings & Co., 172 F.R.D. 53, 57 (W.D.N.Y. 1996), which suggests that privilege may be waived when a party's claim or defense relies on privileged material)).  Known as "at issue" waiver, the doctrine states that

> where a party places legal advice or other privileged facts or communication at issue, it is deemed to have waived the privilege with respect to such facts or communications and can be compelled to produce them.  This doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice.

Am. Re-Insurance Co., 837 N.Y.S.2d at 492; see also County of Erie, 546 F.3d at 228.  "At issue" waiver requires more than "a conclusion that the information sought is relevant and should in fairness be disclosed."  Rhone-Poulenc Rorer, Inc. v. Home Indem, Co., 32 F.3d 851, 864 (3d Cir. 1994), cited with approval in County of Erie, 546 F.3d at 227. Rather, waiver occurs when a party "has asserted a claim or defense that he intends to prove by use of privileged materials," such as when a party asserts a defense of reliance on advice of counsel.  Deutsche Bank Trust Co., 837 N.Y.S.2d at 23.  Although "the burden is on the proponent of the privilege to prove that the privilege was not waived," Oakwood Realty Corp. v. HRH Constr. Corp., 858 N.Y.S.2d 677, 679-80 (App. Div. 2008), there must be "some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." County of Erie, 546 F.3d at 228.

Plaintiff has made no such showing.  First, plaintiff does not claim that defendants have

selectively disclosed <u>privileged</u> material.  <u>See</u> <u>Am. Re-Insurance Co.</u>, 837 N.Y.S.2d at 492 ("This doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice.").  Instead, she appears to argue that defendants have disclosed non-privileged material, but redacted or withheld privileged material.  (<u>See</u> Motion at 8-9 (complaining about redaction of communications involving in-house counsel Butler)).  "At issue" waiver is concerned with the selective disclosure of privileged material, not the disclosure of non-privileged material and redaction or withholding of privileged material.  <u>See</u> <u>Deutsche Bank Trust Co.</u>, 837 N.Y.S.2d at 23 ("Moreover, selective disclosure is not permitted as a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications" (internal quotation marks omitted)); <u>Shinnecock</u>, 652 F. Supp. 2d at 364-65 (holding there was no waiver when only non-privileged material had been disclosed and only privileged material was redacted).  More importantly, there is no showing that defendants intend to rely on privileged material to establish a defense or an element of a defense.  For example, their answers do not assert an advice-of-counsel affirmative defense, which is the quintessential situation in which "at issue" waiver is found.  <u>See</u> <u>Deutsche Bank Trust Co.</u>, 837 N.Y.S.2d at 23; <u>see also</u> Answer to Complaint at 7-10, <u>Aiossa v. Bank of America, et al.</u>, No. 10-CV-01275 (May 10, 2010), ECF No. 3; Answer to Complaint at 9-12,  <u>Aiossa v. Bank of America, et al.</u>, No. 10-CV-01275 (Oct. 1, 2010), ECF No. 19; Answer to Complaint at 9-12,  <u>Aiossa v. Bank of America, et al.</u>, No. 10-CV-01275 (Oct. 1, 2010), ECF No. 20.  Thus, plaintiff has failed to make the requisite showing to properly invoke "at issue" waiver.

B.    The Crime/Fraud Exception Does Not Apply

The crime/fraud exception prohibits a claim of attorney-client privilege "where it involves client communications that may have been in furtherance of a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct." Superintendent of Ins. v. Chase Manhattan Bank, 840 N.Y.S.2d 479, 482 (App. Div. 2007); see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.").   The party seeking to invoke the exception must demonstrate "a factual basis for a showing of probable cause to believe that a fraud or crime has been committed, and that the communications in question were in furtherance of such fraud or crime." Nowlin v. New York, 767 N.Y.S.2d 77, 78 (App. Div. 2003); see also United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). "It is not enough to show merely that privileged communications 'might provide evidence of a crime or fraud.' 'Rather, the communication itself must have been in furtherance of a fraud or crime and must have been intended to facilitate the fraud or crime.'" Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 565 (S.D.N.Y 2008) (quoting In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999) and Shahanian v. Tankian, 242 F.R.D. 255, 258 (S.D.N.Y. 2007)).   Thus, there are two separate probable cause showings required to invoke the crime/fraud exception: (1) probable cause to believe that a fraud or crime has been perpetrated, and (2) probable cause to believe that the communications at issue were in furtherance of and intended to facilitate the fraud or crime. See, e.g., In re Omnicon Group, Inc. Securities Litig., 233 F.R.D. 400, 404-05 (S.D.N.Y. 2006).

-11-

Although the standard is nominally "probable cause," "the Supreme Court has noted that the actual burden to be imposed on a movant seeking to defeat a privilege in this way is still an open question." Omnicom Group, 233 F.R.D. at 406 (citing United States v. Zolin, 491 U.S. 554, 563 n.7, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989)). There has been little guidance on the quantum of proof needed to invoke the crime/fraud exception. See Omnicom Group, 233 F.R.D. at 406. However, courts in the Southern and Eastern Districts of New York have applied a standard more demanding "than a simple, if reasonable, suspicion of fraud" and less demanding than fraud shown by a preponderance of the evidence. In re Omnicom Group, Inc. Securities Litig., No. 02 Civ. 4483, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007); see also Linde v. Arab Bank, 608 F. Supp. 2d 351, 358 (E.D.N.Y. 2009). Such a standard provides robust protection of the attorney-client privilege, while ensuring that the privilege is not used to conceal illicit activities. See Omnicom Group, 233 F.R.D. at 405-06; see also Richard Roe, Inc., 168 F.3d at 71 ("Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford" (citations omitted)).

If it is not clear that the exception applies, a court may, in its discretion, examine the evidence in camera to make that determination. See Linde, 608 F. Supp. 2d at 357 (citing Jacobs, 117 F.3d at 87). Before in camera review will be considered, however, there must be a "'showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review . . . may reveal evidence to establish that the crime-fraud exception applies.'" Id. at 361 (quoting Zolin, 491 U.S. at 572).

The wrongful conduct that plaintiff identifies is an alleged concerted effort on the part of

various departments at Bank of America (specifically, Consumer Real Estate, Advice and Counsel, and legal) to unlawfully retaliate against plaintiff and thwart any consequent lawsuit by selectively choosing which complaints they would record and investigate.  (Motion at 9; Reply at 3).  Plaintiff argues that these allegations are supported by the fact that (1) the legal department was not brought into the investigation until after plaintiff had complained to Advice and Counsel about discrimination and retaliation; (2) investigators had found no wrongdoing in plaintiff's conduct; (3) plaintiff was terminated in alleged violation of Bank of America's progressive discipline policy; (4) a Bank of America employee provided an allegedly false affidavit in a different case stating that she had never had a complaint that Cook had been racially discriminated against; and (5) another Bank of America employee failed to record plaintiff's complaints of discrimination and retaliation.  (Id.). They cite the following evidence: (1) deposition testimony from a Bank of America employee that she reported to Missy George of Advice and Counsel that she had heard Cole make a racist comment about Cook (see Motion, Exh. 2); (2) Missy George's affidavit in the Cook litigation asserting that no one had complained to her of racist comments made in connection with Cook during her investigation of Cook's complaints of discrimination (see id., Exh. 7, at 2); (3) plaintiff's deposition testimony that she informed Advice and Counsel's Libby Krall that she and Cook were being discriminated against (see id., Exh. 4, at 3 (Aiossa Depo. at 261)); (4) a complaint write-up by Lisa White of Advice and Counsel that does not mention plaintiff's discrimination claims (see id., Exh. 11); and (5) deposition testimony and other evidence showing that internal investigations did not find that plaintiff had engaged in fraud or committed ethical violations (see, e.g., id., Exh. 5, at 4-5 (Harnois Depo. at 58-59); id., Exh. 9, at 1, 5, 6; id., Exh 15).

Plaintiff has failed to establish probable cause to believe that a crime or fraud has been

committed.  Her evidence comprises a series of disparate occurrences which are undermined by other evidence and are susceptible of innocent explanations.  It therefore does not permit a reasonable suspicion of a crime, fraud, or other wrongful conduct.  For example, plaintiff points to two instances in which employees allegedly concealed the truth regarding complaints of discrimination: the George affidavit and the White complaint write-up.  However, there is conflicting evidence.  George denies that  that such a complaint was made, and there is no evidence that plaintiff made a discrimination complaint to Lisa White–rather, she testified that she complained to a different employee.  (See Motion, Exh. 7; id., Exh. 4, at 3 (Aiossa Depo. at 261)).  The fact that the legal department was not brought into the investigation until after Aiossa allegedly complained of discrimination is susceptible of an innocent explanation.  The investigation that in-house counsel became involved in ended in plaintiff's termination.  Diana Rhine of Advice and Counsel testified that she believed there was potential for legal action in regard to plaintiff's termination.  (See Opp., Exh. C, at 4 (Rhine Depo. at 67).  Consultation with in-house counsel would likely be standard procedure when an employee was to be terminated based on the results of an investigation into her on-the-job conduct.  The evidence taken together does not add up to a reasonable probability that Bank of America employees conspired to illegally terminate plaintiff and scuttle her ability to challenge the termination in court.

The evidence plaintiff presents is a far cry from the kind of evidence that has resulted in a finding that privilege is overcome by the crime/fraud exception.  In In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, the Second Circuit affirmed the invocation of the crime/fraud exception.  It found that the following evidence provided probable cause to believe that a fraudulent conveyance had been made: a person against whom fines for contempt had been levied sold his company with a short document which lacked "the trappings normally accompanying a transaction

of such magnitude"; the transaction was not between strangers–he sold it to the CEO of the company; and the purchase price remained undetermined.  Id. at 1041.  These established facts permitted the interpretation that "a hasty transaction was put together" in order to avoid payment of the contempt fines.  Id.  In Shahanian, a litigation over a decedent's estate, a "significant array of non-privileged material" demonstrated that false statements had been made to the IRS.  Shahanian, 242 F.R.D. at 259.  The evidence showed that certain objects that were part of the estate at issue were omitted from an appraisal by Sotheby's and their value thereafter omitted from an estate tax return, and that earnings on the sale of property of the estate were repeatedly underreported to attorneys and the IRS.  Id. at 259-60.  This evidence provided probable cause to believe that materially false statements were knowingly made to the IRS.  Id. at 259.

Instead, plaintiff's claim is similarly speculative to that put forward in Omnicom Group.  In that case, the plaintiffs contended that Omnicom attempted to defraud stock purchasers by not including on their books certain losses sustained by a subsidiary.  Omnicom Group, 233 F.R.D. at 409.  The plaintiffs pointed to accounting rules that purportedly required Omnicom to write down its earnings based on these losses.  Id.  They asserted that the write down was required because, even after Omnicom transferred ownership and supposedly gave up control of the troubled assets, it continued to exercise control over them in fact.  Id.  Because the evidence showed that Omnicom did not take a write down, plaintiffs asserted that Omnicom's use of improper accounting measures and the alleged sham transfer of the troubled entities constituted a fraud on the investing public.  Id.  The court, however, held that this evidence did not "demonstrate[] a sufficient likelihood that defendants engaged in a fraud."  Id.  Given that the plaintiffs' interpretation of the underlying facts was "certainly not clear on the current record," the crime/fraud exception to the privilege did not

apply. Id. at 409-10. Plaintiff's claims are similarly insufficient to invoke the exception. See Parnes v. Parnes, 915 N.Y.S.2d 345, 349 (App. Div. 2011) (refusing to apply the exception when the plaintiff "offer[ed] only speculation" that there was a conspiracy to commit a crime against her)

Even if this evidence were to present probable cause to believe that there was a "fraudulent scheme, . . . breach of fiduciary duty or . . . some other wrongful conduct," see Chase Manhattan Bank, 840 N.Y.S.2d at 481, there is no evidence that the communications at issue were themselves "in furtherance of a fraud or crime and . . . intended to facilitate the fraud or crime," Pure Power Boot Camp, 587 F. Supp. 2d at 565. The relevant documents are, as noted above, (1) privileged portions of Corporate Security's report on the final Aiossa investigation; (2) a note between Advice & Counsel and in-house counsel Chad Butler; and (3) emails (with attached reports and handwritten notes regarding the Aiossa investigation) among Fraud Operations, Corporate Security, Consumer Real Estate, Advice and Counsel, and legal. Plaintiff makes no observable attempt to provide a factual basis to believe that the objective of these communications was the perpetration of a fraud, seemingly relying on the mere fact that these communications were made as support. However, there are many reasons besides the wrongful conduct plaintiff alleges that the employees involved in the investigation and consequent termination of plaintiff would seek advice of in-house counsel. Indeed, as noted above, it is likely standard procedure to seek advice of counsel in such cases. The fact that these documents were created in the context of what plaintiff argues was her wrongful termination does not, without more, provide probable cause that the communications furthered a potential crime or fraud. See id. at 566 ("The fact that the communication arose in the larger context of the Defendants' [allegedly illegal] attempt to set up a competing business, and discusses matters which might, in Plaintiffs' eyes, constitute past criminal or fraudulent actions, does not transform

this particular communication into one which furthers a crime or fraud."). Even if plaintiff had raised a sufficient inference that some fraud or wrongful act was committed, she has made no showing that the particular communications here were in furtherance of it. Thus, there is an insufficient factual basis on which to invoke the exception or to review the documents in camera.

III.    In Camera Review Confirms That the Group 2 and Group 3 Documetns Are Privileged

        A.      Group 2 Documents

        Plaintiff objects to defendants withholding these documents, asserting that they are inadequately described in the privilege log.

        It is defendants' burden to establish, with "competent" evidence, the factual basis for their claims of privilege. See von Bulow v. von Bulow, 811 F.2d 136, 144, 147 (2d Cir. 1987); Bowne, 150 F.R.D. at 470 (collecting cases). Conclusory assertions will not suffice to establish these facts. See von Bulow, 811 F.2d at 146. To determine whether the party asserting the privilege has made the requisite showing, courts often turn to "an adequately detailed privilege log in conjunction with evidentiary submissions [such as affidavits] to fill in any factual gaps." Bowne, 150 F.R.D. at 474; see also A.I.A. Holdings v. Lehman Brothers, Inc., No. 97 Civ. 4978, 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002) ("If the assertions of privilege are challenged . . . the withholding party then has to submit evidence, by way of affidavit, deposition testimony or otherwise, establishing only the challenged elements of the applicable privilege or protection . . . ."). A privilege log is adequate when,

        as to each document, it sets forth specific facts that, if credited, would

> suffice to establish each element of the privilege or immunity that is claimed.  The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding the documents cannot be discharged by mere conclusory or ipse dixit assertions.

Bowne, 150 F.R.D. at 474 (internal quotation marks omitted).

Plaintiff asks for production of BANK 1110-11.  Defendants point out that these pages were withheld not because they were privileged, but because they were non-responsive–they deal with a different investigation and do not mention any investigation into plaintiff's conduct  (See Opp. at 13; Motion, Exh. 1, at 2).  Plaintiff counters that they might still be related because they are included in an email thread connected to plaintiff.  (Reply at 8). It is plaintiff's burden to demonstrate that these pages are relevant to a claim or defense.  See Trilegiant Corp. v. Sitel Corp., 272 F.R.D. 360, 363 (S.D.N.Y. 2010).  Plaintiff has failed to meet this burden.  Her argument that emails that do not mention plaintiff's investigation are relevant boils down to a contention that documents that are irrelevant on their face, but which were created close in time to relevant documents are actually relevant.  This stretches the admittedly broad concept of relevance to its breaking point.  See id. (noting that although relevance for discovery purposes is a broad concept, it is not unlimited).

Turning to the documents withheld on the basis of privilege, the Court finds that the privilege log inadequately describes BANK 2687-89, 2801, and 2804-13.[5]  The privilege log merely includes information such as the author, recipients, and the subject heading line, and then conclusorily asserts that the described documents are privileged.  (See Motion, Exh. 1, at 3, 12).  Although defendants' counsel provides more explanation in the papers, defendants fail to submit supplementary evidence

_____

[5]BANK 2802-03 were produced and are not included on the privilege log.  (See Opp. at 2; Motion, Exh. 1, at 12).

-18-

that supports the assertion of privilege.  The Court therefore inspected these documents in camera.  This review confirms that the documents are protected by attorney-client privilege.[6]

Similarly, defendants' assertions in the privilege log regarding BANK 2837-3218 are clearly insufficient to establish that all of the documents in this series are privileged.   In the privilege log, defendants merely state that the documents are in-house attorney Butler's "file on [plaintiff's] investigations."  (Motion, Exh. 1 at 13).   In their opposition, Defendants assert that the file "contain[s] documents and information maintained by Mr. Butler in his capacity as Assistant General Counsel to the Bank in anticipation of litigation and for the purpose of providing legal advice in relation to his role as an attorney with duties related to consumer mortgage fraud."  (Opp. at 14).  While this statement accurately sets out the standards for the two privileges, it is devoid of any other content.  Rather, it is the sort of conclusory assertion that is insufficient to invoke the protection of either privilege.

Not all material in a legal file is privileged.  For example, the attorney-client privilege does not protect an attorney's thoughts which were not communicated to the client or memoranda to the file unless they contain otherwise privileged communications.  Bowne, 150 F.R.D. at 490 (citing New York state cases); see also Fernandez v. City of New York, 31 Misc. 3d 1208(A), 2011 WL

---

[6]BANK 2804-13 are identified as "misrepresentation letters."  A "misrepresentation letter" is, according to deposition testimony, a letter sent to loan investors informing them that a misrepresentation was found in the loan application or supporting documentation.  (See Brown Decl. at 2; id., Exh. 3, at 4).  These particular misrepresentation letters were reviewed by the legal department.   However, plaintiff argues that these misrepresentation letters were the first to undergo this procedure of review by legal and that they should therefore be produced, implying that Bank of America diverted them to the legal department merely to protect them from disclosure.  (See Brown Decl. at 3; id., Exh. 3, at 4 (Leahy Depo. at 34)).  Plaintiff's argument does not undermine the Court's decision that these documents are protected by the attorney-client privilege as communications made for the purpose of procuring or providing legal advice.

1348400, at *7 (N.Y. Sup. Apr. 8, 2011) (unpublished) (noting that plaintiff had produced "non-privileged portions of a legal file").  Similarly, drafts of documents created by an attorney are not privileged unless they contain legal advice or confidential information supplied by the client.  See Bowne, 150 F.R.D. at 490 (collecting cases).  Defendants provide insufficient evidence for the Court to determine whether all of the documents in this "legal file" were created in contemplation of litigation, as required for the work product privilege.  See id.. at 475 n.7 (noting that "an attorney's notes to the file on legal matters" are not privileged unless created in contemplation of litigation); Golden Trade, S.r.L. v. Lee Apparel Co., Nos. 90 Civ. 6291, 90 Civ. 6292, 92 Civ. 1667, 1992 WL 367070, at *6 (S.D.N.Y. Nov. 20, 1992) (same).

The Court has therefore reviewed these documents in camera.  This review confirms that each of the documents withheld as part of Butler's "legal file" is protected by attorney-client or work product privilege.


IV.    Group 3 Documents

These are largely documents from fraud investigator Wendy Leahy to in-house counsel Butler, withheld as attorney-client privileged.  Plaintiff argues that they should be produced because Leahy testified in her deposition that she did not contact Butler for the purpose of receiving legal advice.  (See Brown Decl. at 1-2; id., Exh. 3, at 2-3 (Leahy Depo. at 32-33)).  She further observes that the "majority" of these documents were cc'd to non-legal personnel. (Brown Decl. at 2). Defendants point out that Leahy testified that Butler "reached out" to her regarding the Aiossa investigation.  (See Opp. to Brown Decl. at 1; Brown Decl., Exh. 3, at 2 (Leahy Depo. at 27)).  They argue that Leahy's subsequent communications with in-house counsel were intended to be

privileged, providing as evidence redacted copies of five pages of emails of the group at issue, each of which states, in the "Subject" line, that it is "Attorney-Client work product." (See Opp. to Brown Decl. at 2; id. at 16-20 (copies of BANK 2705-07, 2709, and 2783). They further assert that privileged documents that are copied to non-legal personnel "do not lose their privileged status when shared among corporate employees who share a responsibility for the subject matter of the privileged communication." (Opp. to Brown Decl. at 2).

First, defendants are correct that the mere fact that Leahy did not first approach in-house counsel for advice is not fatal to a claim of privilege. Communications between an attorney and client that are made "for the purpose of facilitating the rendition of legal advice or services" are privileged whether or not they are in response to a specific request from the client. Rossi, 542 N.Y.S.2d at 511. Defendants are also correct that the fact that non-legal employees were cc'd on certain communications does not waive the privilege as long as the non-legal employees "share responsibility for the subject matter of the communication." In re Currency Conversion Antitrust Litig., No. 05 Civ. 7116, 2010 WL 4365548, at *4 (S.D.N.Y. Nov. 3, 2010) (internal quotation marks omitted); see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (collecting cases).

Nonetheless, as above, defendants did not provide sufficient information to determine if these documents are privileged–the conclusory use of the "Attorney-Client work product" label notwithstanding. (See Opp. To Brown Decl. at 16-20). The Court's in camera review, however, confirms that these documents are protected by attorney-client privilege.

-21-

<u>Conclusion</u>

For the foregoing reasons, plaintiff's Motion to Compel is DENIED.  In addition, plaintiff's earlier letter motion for discovery (ECF No. 25), which similarly complained about improper withholding of documents on the basis of attorney-client privilege, is denied as moot.  The Court deemed that letter motion a request for a pre-motion conference.  The Court thereafter granted plaintiff permission to file the instant formal discovery motion.

The deadline for the parties to seek approval to file motions for summary judgment is extended to October 12, 2011.

**SO ORDERED:**

Dated:  Central Islip, New York
          September 12, 2011

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge