FILED
CLERK
9/21/2012 4:14 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PROVIDENCE AIOSSA,

                    Plaintiff,

       -against-                            MEMORANDUM & ORDER
                                            10-CV-1275(JS)(ETB)
BANK OF AMERICA, N.A., JOHN FRAZZA,
and SUE COLE,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:    Tracey Lyn Brown, Esq.
                  Derek Sells, Esq.
                  The Cochran Firm
                  233 Broadway, 5th Floor
                  New York, NY 10279

For Defendants:   Caroline F. Turcotte, Esq.
                  Siobhan M Sweeney, Esq.
                  Edwards Wildman Palmer LLP
                  111 Huntington Avenue
                  Boston, MA 02199

                  Deborah Michelle Zawadzki, Esq.
                  Jonathan B. Bruno, Esq.
                  Kaufman, Borgeest & Ryan LLP
                  120 Broadway, 14th Floor
                  New York, NY 10271
```

SEYBERT, District Judge:

Plaintiff Providence Aiossa sued Defendants Bank of America, N.A. ("BoA"), John Frazza, and Sue Cole (collectively, "Defendants") for employment discrimination, retaliation, and breach of contract. Pending before the Court is Defendants' motion for summary judgment (Docket Entry 58). For the following reasons, this motion is GRANTED.

BACKGROUND

The Court will describe any relevant factual disputes in the discussion section below. First, though, it provides some brief background on this case. According to Plaintiff, she was one of BoA's top-producing mortgage loan officers in the Long Island area. In January 2007, Plaintiff complained to Defendant Cole that Cole's treatment of Plaintiff's boss, Keith Cook, was racially discriminatory (Cook is black). Shortly after, Plaintiff was effectively transferred from the Long Island market to the Manhattan market. And, in July 2007, BoA began a series of investigations into the propriety of Plaintiff's loan-origination practices. Although all of these investigations ended without a finding of misconduct, Plaintiff was fired in 2008.

DISCUSSION

Plaintiff asserts discrimination, retaliation, and aiding and abetting claims under both the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). She also asserts a breach of contract claim arising out of Defendants' alleged failure to pay her all of the compensation to which she was entitled.

I. Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to

2

any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Mere conclusory allegations or denials will

3

not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II. Analysis

The Court considers Plaintiff's age discrimination, retaliation, aiding and abetting, and contract claims in order.

A. Age Discrimination

Defendants are entitled to summary judgment on Plaintiff's age discrimination claims. Age discrimination claims under the NYSHRL and NYCHRL are analyzed using the familiar McDonnell Douglas burden-shifting framework. E.g., Colon v. Trump Int'l Hotel & Tower, No. 10-CV-4794, 2011 WL 6092299, at *4 (E.D.N.Y. Dec. 7, 2011). At the first step, Plaintiff has the burden of establishing a prima facie case of discrimination by showing that "(1) she was within the protected age group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Id. (citing Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010)). If Plaintiff satisfies her prima facie burden, then the burden shifts to Defendants "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id. If they do so, the

4

Plaintiff can nevertheless proceed to trial if she has evidence that Defendants' stated reasons for their actions were pretextual and that Plaintiff's age was the true reason for their decision.[1] Id.

Here, Plaintiff has failed to establish a prima facie case of age discrimination because she hasn't shown that the relevant adverse employment actions occurred under circumstances giving rise to an inference of discrimination.[2] Plaintiff was transferred in January 2007 and fired in 2008. Additionally, in her view, she was subjected to a series of sham investigations beginning in July 2007. But the only evidence Plaintiff can point to in support of an inference of discrimination is: (1) a 2005 statement from Frazza to Cook that Cook should find "new

---

[1] Under the federal anti-age discrimination law, plaintiffs must show that their age was the "but-for" motivation behind the adverse employment action. It is less clear whether plaintiffs suing under the NYSHRL must satisfy a "but-for" standard or the more lenient "motivating factor" standard, the latter of which permits "mixed motive" claims. Colon, 2011 WL 6092299, at *6; see also DiGirolamo v. MetLife Group, Inc., No. 11-CV-2719, 2012 WL 3660525, at *1 n.3 (2d Cir. Aug. 28, 2012). Similarly, it is unclear what standard applies to NYCHRL age discrimination claims, although several district courts have suggested that these claims retain the "motivating factor" standard. See Colon, 2011 6092299, at *6.

[2] At the outset, the Court notes that any claim arising out of BoA's failure to promote Plaintiff in 2006 is time-barred because, although she argues otherwise, Plaintiff has not established that Defendants' conduct was part of a continuing violation. See Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004); Washington v. Cnty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (Sotomayor, J.).

5

blood" for his team (Pl. Opp. 2); (2) BoA's decision in early 2006 to hire a younger employee for a position to which Plaintiff was not promoted (id. at 2; Pl. 56.1 Cntr-Stmt. ¶ 36); and (3) a statement from Plaintiff's former manager that Frazza once said that it would be cheaper to have three loan officers doing the job of one top producer (id. ¶ 46). The first two items are too far removed in time to raise an inference of discrimination surrounding the alleged adverse actions. See, e.g., Grant v. Roche Diagnostics Corp., No. 09-CV-1540, 2011 WL 3040913, at *7 (E.D.N.Y. July 20, 2011) (statement in fall 2006 was not relevant to discriminatory intent behind February 2008 firing); see also Smith v. Revival Home Health Care, Inc., No. 97-CV-4415, 2000 WL 335747, at *4 (E.D.N.Y. Mar. 28, 2000) ("Statements made long before and not in the context of the adverse action cannot support a claim of discriminatory motive for that action."). The third item is inadmissible hearsay, FED. R. EVID. 801; FED. R. CIV. P. 56(c)(2), and even if it was admissible, it is not probative of any discriminatory intent, cf. Khan v. HIP Centralized Laboratory Services, Inc., 03-CV-2411, 2006 WL 842916, at *7 (E.D.N.Y. Mar. 27, 2006) ("To the extent that his comments were about seniority, rather than age, animus toward seniority does not create an inference of discrimination.").

6

B. Retaliation

Plaintiff also asserts that she was transferred, investigated, and fired in retaliation for her complaining that BoA's treatment of Cook was racially discriminatory. Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

Retaliation claims under the NYSHRL and the NYCHRL are also analyzed under the McDonnell Douglas framework.[3] Stavis v. GFK Holding, Inc., 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011). "To establish a prima facie case of unlawful retaliation under the NYSHRL, 'a plaintiff must prove that: (1) he participated in a legally protected activity: (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action.'" Id. (quoting Bowles v. N.Y.C. Transit Auth., 285 F. App'x 812, 814 (2d Cir. 2008)). Once Plaintiff has met her prima facie burden, the issue becomes whether Defendants can identify a legitimate, non-retaliatory reason for their actions. E.g., Dixon v. Int'l Federation of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011). If so, then

---

[3] Retaliation claims under the NYCHRL are broader than those under federal law or the NYSHRL with respect to what constitutes an adverse employment action. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010). The difference is not material in this case.

7

Plaintiff must offer evidence that Defendants' stated reason is a pretext for retaliation. Id.

Here, Plaintiff advances two theories of retaliation. First, she alleges that she complained about racial discrimination in January 2007 and was stripped of her Long Island banking centers shortly after. (Pl. Opp. 18.) Second, she alleges that she complained to BoA's Advice and Counsel Unit in March 2008 about (a) age discrimination and (b) retaliation for her earlier complaint about race discrimination. (See id.) In her view, the March 2008 complaint led to further internal investigations of her loan-origination practices and her eventual firing.

Plaintiff's first theory cannot survive summary judgment. Assuming for the moment that she can make out a prima facie case, see Vahos v. General Motors Corp., No. 06-CV-6783, 2008 WL 2439643, 5 (E.D.N.Y. Jun. 16, 2008), Defendants have proffered a legitimate, non-retaliatory reason--a reshuffling of bank personnel in the New York region--for their decision to reassign Plaintiff's Long Island territory. (See, e.g., Defs. 56.1 Stmt. ¶¶ 38-40.) Plaintiff attempts to rebut Defendants' explanation by interactions that she had with Cole: Plaintiff says that after she told Cole that (a) she objected to the racially discriminatory way Cook was being treated and (b) she would prefer to stay on Cook's team rather than transfer to

8

David Moss' team, Cole replied that Plaintiff's Long Island banks would be taken away and that the only way to retain them would be to accept a transfer to the new Long Island team. (See Pl. Dep. 219-20.) But on its face, this evidence reflects that Plaintiff had the option of remaining on Long Island. In light of BoA's corporate reorganization, this conversation falls far short of showing that Plaintiff's banking centers were taken from her in retaliation of her support for Cook.[4] See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("The plaintiff must 'produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action.'" (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (alterations omitted))).[5]

---

[4] Plaintiff also repeatedly refers to a 2008 statement by Frazza in which he implicitly threatened to fire Plaintiff (Pl. Opp. 19, 21), but it's not clear what this evidence is offered to show. She speculates that it is because Frazza was frustrated that BoA's Advice and Counsel Unit rejected his attempt to issue Plaintiff a written warning following a July 2007 internal investigation (Pl. Opp. 8), but this speculation is wholly unsupported. Moreover, Frazza's threat or his desire to see Plaintiff receive a written warning in July 2007 has no apparent connection to any age or retaliatory animus.

[5] To the extent Plaintiff claims that her January 2007 complaint caused Defendants to initiate an investigation into her loan pipeline in July 2007, this claim cannot survive summary

Plaintiff's second theory cannot survive summary judgment either. She alleges that she complained to BoA's Advice and Counsel Unit in April 2008 about discrimination and retaliation (see, e.g., Aiossa Dep. 259-61) and that, as a result, she was subjected to further internal investigations and eventually fired (Pl. Opp. 8, 10-11, 13). Assuming, again, that Plaintiff can make out a prima facie case, Defendants have proffered evidence of a legitimate, non-retaliatory reason for their actions: to wit, their continued misgivings concerning Plaintiff's role in generating fraudulent loans. In May 2008, the Suffolk County District Attorney's Office contacted BoA about an incident of possible identity theft in connection with a loan originated by Vincent Aiossa, Plaintiff's son and a member of her team. (Defs. 56.1 Stmt. ¶ 108.) This prompted an investigation of Plaintiff's loan pipeline (id. ¶¶ 109-111) that revealed a pattern of inconsistencies and misrepresentations

---

judgment either. Assuming that this investigation was an adverse action under the NYSHRL or the broader NYCHRL, and assuming that Plaintiff met her prima facie burden, she may not rely on temporal proximity to rebut Defendants' stated reason for their action. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). Here, Defendants proffered a legitimate reason for the investigation: Plaintiff appeared on an internal watch list in June 2006 because of fraud concerns with respect to two loans that she had originated. (See, e.g., Defs. 56.1 Stmt. ¶ 67.)

related to loans connected to Plaintiff (see id. ¶ 121). According to Defendants, these red flags were the reasons Plaintiff was fired (along with Vincent and another son, who also worked on Plaintiff's team). (Id. ¶¶ 130, 132.)

Plaintiff attempts to rebut this evidence with irrelevancies and speculation. Chiefly, she points to evidence that one of the investigators who examined Plaintiff's pipeline could not recall anything in his investigation that would have given BoA reason to lose trust or confidence in Plaintiff. (See Pl. Opp. 11.) But another examiner did remember finding inconsistencies and misrepresentations associated with loans in Plaintiff's pipeline. (See Alson Dep. 115.) These issues amounted to a concerning "pattern" (see Caslin Dep. 122-123 (discussing Alson's findings)) of "red flags" for potential fraud (Alson Dep. 51-52). And, regardless of whether Plaintiff was personally implicated in any fraudulent lending, these issues caused BoA to lose trust and confidence in Plaintiff's ability to manage her loan pipeline (see Rhine Dep. 48 (stating that BoA lost trust in Plaintiff by stopping short of accusing her of fraud)) or supervise the loan officers in her charge (see Cook Dep. 103; Rhine Dep. 69).

The remaining material that Plaintiff cites in support of pretext serves her no better. She alleges that her termination was in violation of BoA's "progressive" disciplinary

11

policy whereby employees are to be given a verbal warning and two written warnings before they are terminated. (Pl. Opp. 20.) On its face, though, the disciplinary policy is clear that these steps are "guidelines" that are "not inflexible" and that managers have discretion in implementing them. (Pl. Ex. 25 at BANK006800 ("Use of the guidelines may vary with the circumstances.").)

Plaintiff also asserts that Frazza "told several people" that he wanted Plaintiff and her sons fired "[n]otwithstanding that no one suspected the Aiossas of wrongdoing." (Pl. Opp. 10.) The evidence in "support" of this assertion is anything but; the email (which was neither sent to or from Frazza) states simply that "although John [Frazza] and Advice and Cousnel believe that [Plaintiff] is involved they don't feel like they have enough specific evidence to terminate her at this point." (Pl. Ex. 34.) Similarly, Plaintiff misquotes another document to make it seem as if Frazza "wanted to 'pursue harsh action against the Aiossa's [sic].'" (Pl. 11 (misquoting Pl. Ex. 33 at BANK0953).) That document actually says that Frazza "is pursuing harsh actions" in the context of Vincent Aiossa's involvement with the loan that was being investigated by the Suffolk DA. (See Pl. Ex. 33.)

The rest of Plaintiff's "pretext" evidence mainly concerns Frazza's threat about firing a top loan generator

12

(i.e., Plaintiff) that happened before Plaintiff's April 2008 complaint (Pl. Opp. 8) and baseless speculation that Cole and Frazza targeted Plaintiff for retaliation because she "continued to prosper" (id. 7).[6] Neither of these theories raises an issue of fact as to Defendants' retaliatory intent. See Boise v. N.Y. Univ., 201 F. App'x 796, 797 (2d Cir. 2006) (mere speculation insufficient to show pretext). On this evidence, no jury could reasonably find that that retaliation was a motive for Defendants' actions. See Bennett v. Verizon Wireless, 326 F. App'x 9, 10 (2d Cir. 2009); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). At bottom, Plaintiff has only

---

[6] Plaintiff makes much of Cole's allegedly using a racist slur in reference to Cook to show that Defendants' actions toward her were motivated by retaliatory animus. (See Pl. Opp. 14.) The only evidence of this remark, though, is from testimony of another former BoA employee during a deposition in connection with Cook's case against the bank. (See Pl. Ex. 27 at 54.) This is inadmissible hearsay. Plaintiff argues that (a) it falls within the former testimony exception to Federal Rule of Evidence 804 and (b) Defendants waived any objection by not raising it when she cited the same evidence in an earlier motion to compel. Neither argument is persuasive. Plaintiff has not explained why the Court should treat the Plaintiff as "unavailable," Fed. R. Evid. 804(a), and the Court disagrees that Defendants' not objecting to this evidence during an earlier motion to compel acts as a waiver. On the latter point, the authority Plaintiff cites (Pl. Sur-Reply 2) holds that a party's failure to object to evidence at trial waives the party's right to appeal the evidentiary issue. Krieger v. Gold Bond Bldg. Prods., 863 F.2d 1091, 1096 (2d Cir. 1988). Accordingly, the Court will not consider the employee's hearsay statement that she heard Cole use a racist slur. Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 222 (2d Cir. 2004); accord Butler v. Indianapolis Metro. Police Dep't, No. 07-CV-1103, 2009 WL 2092416, at *3 (S.D. Ind. July 13, 2009).

temporal links between her April 2008 complaint, the May 2008 investigation into her pipeline (which was prompted by an inquiry from law enforcement), and her firing at the end of August 2008. And temporal proximity, without more, is insufficient to show pretext. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

### C. Aiding and Abetting

As Plaintiff has not established an underlying violation of the NYSHRL or the NYCHRL, her aiding and abetting claims against Cole and Frazza also fail. E.g., Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("However, liability under the HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor.").

### D. Breach of Contract

Plaintiff claims that BoA breached the 2008 CRE Retail Sales Plan by not paying commissions on loans that closed while she was on administrative leave. (Defs. 56.1 Stmt. ¶ 138.) There is no evidence that Plaintiff was denied the compensation she earned. Plaintiff was paid $15,000 per month while she was on leave (Defs. 56.1 Stmt. ¶ 139), and the loans that closed while she was away did not entitle her to anything beyond that amount (see Defs. 56.1 Stmt. Ex. C ¶ 11). This evidence is undisputed. Plaintiff's conclusory assertion that she was on

14

pace to earn more in 2008 than she earned in 2007 does not raise a material issue of fact as to whether BoA deprived her of commissions during the leave period.

## CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion GRANTED. The Clerk of the Court is respectfully directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   September   21  , 2012
         Central Islip, New York